```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**BEVERLY ANN MULLINS,**

    Plaintiff,

v().                                    Civil Action No. 2:10-cv-00547

**JOHN W. CLARK OIL COMPANY, INC.,**
**and CLARK'S PUMP 'N' SHOP, INC.**
foreign corporations,

    Defendants,

### MEMORANDUM OPINION AND ORDER

Pending is the plaintiff's motion to remand, filed April 28, 2010.

### I.

Plaintiff, a resident of Kanawha County, began working as an assistant manager for defendant Clark's Pump 'N' Shop, Inc. ("Pump 'N' Shop"), in August 2000. (Compl. ¶¶ 2, 4). Defendants John W. Clark Oil Company, Inc. ("Clark Oil") and Pump 'N' Shop are foreign corporations incorporated under the laws of the Commonwealth of Kentucky. (Compl. ¶ 3).

Plaintiff was assigned to a new store and one of her primary responsibilities was to assist in getting the new

business running successfully.  (Id. at ¶ 5).  On January 3, 2001, plaintiff underwent a "performance review" wherein it was noted that plaintiff was doing well at her job. (Id. at ¶ 6). Accordingly, she was assigned additional duties and it was recommended that she receive an increase in pay.  (Id.).  On March 28, 2001, plaintiff underwent another "performance review wherein it was stated that she was doing her job well, and she rated a 3.7 in a grading system with 4 as the highest score and 1 as the lowest.  (Id. at ¶ 7).  Plaintiff was again recommended for a pay raise.  (Id.).

    In the second performance review, plaintiff was encouraged to, among other things, "'look for things to do to improve sales and reduce costs.'"  (Id. at ¶ 8).  One area in particular in which plaintiff attempted and was encouraged to improves sales related to the stores front counter items, particularly the West Virginia Lottery scratch-off tickets.  (Id. at ¶ 9).  The store of Pump 'N' Shop at which plaintiff worked was recognized by the West Virginia Lottery Commission ("Lottery Commission") multiple times from 2000 to 2006 for outstanding sales, due in part to the proactive efforts of plaintiff and other employees to encourage the purchase of scratch-off and other lottery tickets.  (Id. at ¶ 10).  Lottery Commission representatives would visit the store on

occasion during this time and hand out scratch-off tickets and other items to plaintiff and the other employees in a show of appreciation for the store's high sales. (Id. at ¶ 11). Plaintiff and other employees routinely scratched off these tickets during work hours when not otherwise committed to work duties. (Id. at ¶ 12). The Lottery Commission also gave the Pump 'N' Shop store a certain percentage or amount on any high-winning tickets bought from the store, increasing the push for plaintiff and other employees to increase sales of scratch-off and other lottery tickets. (Id. at ¶ 14).

Additionally, many of the customers who bought winning tickets from the plaintiff and other employees would often pass some of the winnings on to plaintiff and the other employees, typically in the form of additionally purchased scratch-off or other tickets. (Id. at ¶ 13). In the summer of 2004, Steve McCormick became plaintiff's manager. (Id. at ¶ 15). McCormick advised plaintiff that one marketing tool to induce customers to purchase lottery tickets was to reveal that the employees and others were winning on the scratch-off and other tickets. (Id. at ¶ 16). McCormick and other company officials routinely gave plaintiff and the other employees scratch-off tickets during

3

work hours in a show of appreciation for their services.  (Id. at ¶ 17).

On January 31, 2005, plaintiff underwent another performance review, this time performed by her new manager, McCormick.  (Id. at ¶ 18).  Plaintiff again scored in the 3.0-4.0 range and was recommended for another pay raise.  (Id. at ¶ 19). In May 2005, plaintiff's job title changed from assistant manager to cashier.  (Id. at ¶ 20).  However, she continued at her assistant manager pay rate and subsequently received a pay raise. (Id. at ¶ 21).

On May 15, 2007, while lifting a tote full of canned food, plaintiff injured her lower back during the performance of her work duties.  (Id. at ¶ 22).  Plaintiff did not timely file a Workers' Compensation claim or an incident form over this matter because she assumed the condition would resolve on its own as had similar occurrences in the past.  (Id.).  On December 31, 2007, plaintiff injured her back and left hip while emptying trash cans at work.  (Id. at ¶ 23).  She immediately notified her assistant manager, Libby Martin, of the incident.  (Id. at ¶ 24).  Inasmuch as Martin did not know where the company incident forms were kept, plaintiff was unable to complete the incident report form until the next day, January 1, 2008.  (Id.).

Experiencing ongoing and worsening symptoms, plaintiff sought and received medical treatment from her primary care provider, Jennifer Hall, C-FNP, on January 2, 2008. (Id. at ¶ 25). Hall noted plaintiff had lower back pain and pain in the left lower extremity. (Id.). She ordered various tests, including x-rays and an MRI. On February 18, 2008, plaintiff telephoned BrickStreet, Pump 'N' Shop's workers' compensation insurance carrier, to file a claim regarding the December 31, 2007, work-related injury. (Id. at ¶ 26).

On February 22, 2008, Pump 'N' Shop completed its portion of the workers' compensation application and provided plaintiff with two "Employee Disciplinary Reports" signed by McCormick. (Id. at ¶¶ 27, 28). The first report indicated that she was being disciplined for not wearing a back brace while changing the garbage on December 31, 2007. (Id. at ¶ 28). The second stated that the cause for discipline was her failure to complete a company incident report. (Id.). On both of these reports, plaintiff offered explanatory remarks indicating that "if back braces were even at the store no other employees to her knowledge had ever used them or were required to use them" and that she did not fill out the incident

report immediately because her assistant manager did not know where the forms were at the time.  (Id. at ¶ 29).

On February 26, 2008, John Sebastian, Human Resources Director for defendant John W. Clark Oil Company, Inc., visited plaintiff's store and confronted her about the filing of the Workers' Compensation claims.  (Id. at ¶ 30).  He then admonished her for filing the claims and inquired whether she intended on pursuing the claims.  (Id. at ¶ 31).  After she responded that she did intend to pursue the claims, he advised her to give the matter further thought and otherwise expressly and implicitly discouraged her from doing so.  (Id.).

On March 1, 2008, Ms. Hall formally ordered that plaintiff be restricted to only light duties at work.  (Id. at ¶ 32).  Plaintiff informed McCormick of these restrictions.  (Id.). On March 5, 2008, plaintiff left work to seek treatment at the Charleston Area Medical Center because her injuries were worsening. (Id. at ¶ 33).  The treating physicians at the Charleston Area Medical Center ordered plaintiff to stay off work for three days.  (Id.).

Upon plaintiff's return to work on March 10, 2008, she noticed her schedule had been changed.  (Id. at ¶ 34).  For the

previous four years, she had worked a fixed schedule of Monday through Friday, 6:00 am to 2:00 p.m.  (Id.).  Her new schedule required her to work sporadic hours and included weekends.  (Id.).  Plaintiff was scheduled to work 10:00 a.m. to 6:00 p.m on Monday, 11:00 a.m. to 7:00 p.m. on Tuesday and Wednesday, off on Thursday and Friday, 6:00 a.m. to 2:00 p.m. on Saturday, and 2:00 p.m. to 10:00 p.m. on Sunday.  (Id.).  Plaintiff is unaware of any other employee's schedule having been adjusted around this time.  (Id. at ¶ 35).

On March 15, 2008, plaintiff suffered another injury while employed by Pump 'N' Shop.  (Id. at ¶ 36).  On this occasion, plaintiff tripped over a wet floor sign, reinjuring her lower back and injuring her right elbow.  (Id.).  That same day, plaintiff completed the incident report for Pump 'N' Shop.  (Id. at ¶ 37).  She indicated in the incident report that the manager and area supervisor were notified of the incident.  (Id. at ¶ 38).  Plaintiff also completed her portion of the Workers' Compensation application form and one of the Charleston Area Medical Center's attending physicians, Dr. Bailey, completed the physician's section.  (Id. at ¶ 39).  At this time, Dr. Bailey ordered plaintiff to stay off work for the next five days.  (Id. at ¶ 40).  Pump 'N' Shop completed its portion of

7

plaintiff's Workers' Compensation application on March 17, 2008. (Id. at ¶ 41).

On March 18, 2008, Dr. Summers, plaintiff's new treating physician, ordered plaintiff to be stay off work until April 2, 2008, to avoid further aggravation of her injuries. (Id. at ¶ 42). When plaintiff went to deliver her work excuse from CAMC to McCormick, he handed her a "Termination Report Form" in which he stated the basis for her termination was "'Violation of Company Policy (Playing Scrach [sic] on Clock).'" (Id. at ¶¶ 43, 44). Plaintiff asked McCormick about the proffered basis for her termination because the activity was not only implicitly allowed by the defendants previously, but at times was actually encouraged. (Id. at ¶ 45). McCormick responded that it was not as much the act of playing scratch-offs as it was that she had stolen the scratch-offs. (Id. at ¶ 46). Plaintiff informed McCormick that she had not stolen scratch-off tickets and produced a copy of a personal check showing that she had purchased tickets with her own money. (Id. at ¶ 47). McCormick then stated that the basis of termination was solely because of playing the scratch-off tickets while at work, irrespective of whether the tickets were stolen or rightfully purchased. (Id. at ¶ 48). As a result of her termination, plaintiff claims to have

suffered great economic loss and severe physical, emotional and mental distress. (Id. at ¶ 49).

Plaintiff filed this action two years later in the Circuit Court of Kanawha Count on March 17, 2010. In her complaint, plaintiff alleges five causes of action. First, plaintiff contends that defendants' actions constitute unlawful retaliatory discharge motivated, in whole or in part, by the plaintiff's attempts to avail herself of the benefits provided by the Workers' Compensation program, in violation of W. Va. Code §§ 23-5A-1 and 23-5A-3(a). (Id. at ¶ 51). Second, plaintiff contends that defendants' actions constitute unlawful retaliatory discharge in violation of the substantial public policy of the State of West Virginia as articulated in Harless v. First Nat'l Bank in Fairmont, 246 S.E.2d 270, 275 (W. Va. 1978) (holding that "where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge"). (Id. at ¶ 53). Third, plaintiff contends that the defendants impermissibly refused to reinstate plaintiff to her employment as required by W. Va. Code § 23-5A-3(b). (Id. at ¶ 55). Fourth, plaintiff contends that plaintiff's termination was based upon, in whole or in part, plaintiff's disability, in

9

violation of the West Virginia Human Rights Act, W. Va. Code § 5-11-9(1). (<u>Id.</u> at ¶ 57). Fifth, plaintiff contends that defendants' reckless actions equate to either an intentional or negligent infliction of emotional distress. (<u>Id.</u> at ¶ 59). Based on these claims, plaintiff seeks compensatory damages, punitive damages, pre-judgment and post-judgment interest, the costs of this action, attorneys fees and such other general relief as permitted by law. (<u>Id.</u> at ¶ 60).

Defendant removed plaintiff's action on April 21, 2010, citing diversity jurisdiction as the sole grounds for removal. (Notice of Removal ¶ 5). Plaintiff filed a motion to remand on April 28, 2010. Defendants did not file a response to the motion. On May 12, 2010, the parties filed a stipulation consenting to remand the case to state court.

## II. Governing Standard

The court is vested with original jurisdiction of all actions between citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). The statute establishing diversity jurisdiction is to be strictly construed. <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100,

108-09 (1941); Healy v. Ratta, 292 U.S. 263, 270 (1934); Schlumberger Indus., Inc. v. Nat'l Surety Corp., 36 F.3d 1274, 1284 (4th Cir. 1994).  The party seeking removal bears the burden of establishing federal jurisdiction and, if challenged, also bears the burden of proving that federal jurisdiction was properly invoked.  Mulcahey v. Columbia Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994).

In a case that is filed initially in federal court, a district court has original jurisdiction if the requisite diversity of citizenship exists unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).  However, the "legal certainty" test applies only in instances in which a plaintiff invokes federal jurisdiction by filing a case in federal court.  Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 935 (S.D. W. Va. 1996).

A different test applies "in removal situations . . . in which the plaintiff has made an unspecified demand for damages in state court."  Id.  A defendant who removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a

**preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount of $75,000. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996); De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993) and De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. 1995); Gafford v. Gen. Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993); Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992); Sayre v. Potts, 32 F. Supp. 2d 881, 885 (S.D. W. Va. 1999); Landmark Corp., 945 F. Supp. at 935.  A court must consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied.  Weddington v. Ford Motor Credit Co., 59 F. Supp. 2d 578, 584 (S.D. W. Va.1999); Mullins v. Harry's Mobile Home, Inc., 861 F. Supp. 22, 23 (S.D. W. Va.1994).**

### III.  Discussion

**Here, defendant removed this matter to federal court based on diversity jurisdiction.  Plaintiff did not specify the amount of damages sought in her complaint.  Accordingly, it is the defendant's burden to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.**

In the notice of removal, defendant asserts that plaintiff's claims are in excess of $75,000 based on the nature of plaintiff's claims. (Notice of Removal ¶ 6). However, defendant subsequently joined plaintiff in a stipulation consenting to remand. Inasmuch as defendant stipulated that the case should be remanded and has not responded to plaintiff's motion to remand, defendant has not satisfied its burden of proving by a preponderance of the evidence that the amount in controversy is met in this case.

Based upon the foregoing, the court concludes that it lacks subject matter jurisdiction and accepts the remand stipulation by the parties. The court, accordingly, ORDERS that plaintiff's motion to remand be, and it hereby is, granted. The court further ORDERS that this action be, and it hereby is, remanded for all further proceedings to the Circuit Court of Kanawha County.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties and a certified copy to the clerk of court for the Circuit Court of Kanawha County.

DATED:  May 17, 2010

John T. Copenhaver, Jr.
United States District Judge